Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7377 | **DATE** | 5/20/2004 |
| **CASE TITLE** | Premcor USA, Inc., et. al. Vs. American Home Insurance Co | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. For the reasons stated in the attached memorandum opinion and order, American Home Insurance Company's motion for summary judgment is granted. Premcor's motion for summary judgment is denied. Judgment is entered in favor of American Home Insurance. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAY 21 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MF | courtroom deputy's initials | | mailing deputy initials | |

Date/time received in central Clerk's Office

PREMCOR USA, INC. and THE PREMCOR )
REFINING GROUP, INC., )
)
    Plaintiffs, ) No. 03 C 7377
)
v. ) Judge John W. Darrah
)
AMERICAN HOME ASSURANCE COMPANY, )
)
    Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Premcor USA, Inc. and the Premcor Refining Group, Inc., filed an action for declaratory relief and damages arising out of a dispute relating to Defendant's contractual obligation to pay defense costs and indemnify Plaintiffs for two underlying tort actions. Presently before the Court are the parties' cross-motions for summary judgment.

## BACKGROUND

Elizabeth M. Szabla and Marguerite Forsythe filed suits against Clark USA, Inc., in the Circuit Court of Cook County, Illinois, seeking damages for bodily injuries allegedly sustained as a result of an explosion and fire on March 15, 1995, at a refinery in Blue Island, Illinois, that is owned by Clark Refining & Marketing, Inc, now known as the Premcor Refining Group, Inc.[1] (Def.'s 56.1(a)(3) Statement ¶ 1). Plaintiffs, in these Cook County actions, allege that Premcor employees, Michael Forsythe and Gary Szabla, were inside a tool shed when hydrocarbons in an Isomax Unit were allowed to spill out, eventually "flash", and result in a chemical explosion which killed

---

[1] Hereinafter Clark Refining Group, Inc. will be referred to as Premcor.



Michael Forsythe and Gary Szabla. (Id., ¶ 2). In both lawsuits, Premcor is being sued for negligence under the Wrongful Death Act and the Survival Act. (Id., ¶ 3).

JBF Associates, Inc., a defendant in both Cook County suits, was allegedly retained, in part, to conduct a hazard analysis of the Isomax Unit at the Blue Island refinery. (Def.'s 56.1(a)(3) Statement ¶ 5). In both actions JBF is being sued for negligence under the Wrongful Death Act and Survival Act. (Id., ¶ 6). Forsythe is also suing JBF as a third-party beneficiary for breach of the contract JBF had with Premcor. (Id., ¶ 7). The contract required Premcor to fully indemnify JBF for liability on Forsythe's claim against JBF. (Def.'s 56.1(a)(3) Statement ¶ 9). Premcor has been indemnifying JBF for its defense costs associated with the underlying actions. (Id., ¶ 10).

Reliance National Indemnity Company issued a Commercial General Liability policy to Premcor. (Def.'s 56.1(a)(3) Statement ¶ 12). The Reliance policy was effective from October 1, 1994 to October 1, 1995. (Id., ¶ 13). Pursuant to Endorsement #2 of the Reliance policy, Premcor is a named insured. (Id., ¶ 14).

The Reliance policy is subject to the following limits of insurance: (a) General Aggregate Limit (Other Than Products – Completed Operations) – N/A; (b) Products – Completed Operations Aggregate Limit – $4,000,000; (c) Personal and Advertising Injury Limit – $1,750,000; and (d) Each Occurrence Limit – $1,750,000. (Def.'s 56.1(a)(3) Statement ¶ 15). The Reliance policy applies to "bodily injury" resulting from an "occurrence." (Id., ¶ 16). Reliance became insolvent at some time after the inception of the Reliance policy. (Id., ¶ 20).

Endorsement #4 of the Reliance policy, entitled "Self-Insurance Endorsement," provides the following:

> (1) THE COMPANY'S OBLIGATION TO PAY DAMAGES ON BEHALF OF THE INSURED APPLIES ONLY TO THAT PORTION OF THE ULTIMATE NET LOSS, AS DEFINED IN PARAGRAPH (2) OF THIS ENDORSEMENT, IN EXCESS OF THE SELF INSURED RETENTION AS STATED IN PARAGRAPH (3) OF THIS ENDORSEMENT.
>
> (2) THE FOLLOWING DEFINITION IS ADDED TO SECTION V - DEFINITIONS OF THE POLICY:
>
> ULTIMATE NET LOSS: THE WORDS "ULTIMATE NET LOSS" SHALL MEAN THAT AMOUNT PAYABLE IN SETTLEMENT OF LIABILITY OF THE INSURED AFTER MAKING DEDUCTIONS FOR ALL RECOVERIES AND FOR OTHER VALID AND COLLECTIBLE INSURANCE AND SHALL NOT INCLUDE ANY EXPENSES AND COSTS.
>
> (3) SELF INSURED RETENTION:
>
> > $250,000 EACH AND EVERY OCCURRENCE, AND SHALL EXCLUDE ANY EXPENSES OR COSTS.
>
> SHOULD ANY CLAIM OR SUIT TO WHICH THIS POLICY APPLIES BE SETTLED FOR A TOTAL AMOUNT NOT EXCEEDING THE RETAINED LIMIT, THEN NO CLAIM HANDLING EXPENSES OR LEGAL EXPENSES SHALL BE PAYABLE BY THE COMPANY.
>
> SHOULD THE SETTLEMENT AMOUNT FOR ANY CLAIM OR SUIT EXCEED THE RETAINED LIMIT, THE COMPANY SHALL PAY ITS PROPORTION OF CLAIM HANDLING AND/OR LEGAL EXPENSES (EXCLUDING SALARIES OF EMPLOYEES AND OFFICE EXPENSES OF THE INSURED) AND/OR SUPPLEMENTARY PAYMENTS IN THE RATIO WHICH ITS PROPORTION OF THE LIABILITY FOR THE JUDGMENT RENDERED, OR SETTLEMENT MADE, BEARS TO THE WHOLE AMOUNT OF SAID JUDGMENT OR SETTLEMENT.

(Def.'s 56.1(a)(3) Statement ¶ 17).

The Reliance policy contains the following provision under the heading, "SUPPLEMENTARY PAYMENTS – COVERAGES A AND B":

> We will pay, with respect to any claim or "suit" we defend:
>
> 1. All expenses we incur.
>
> 2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.
>
> 3. The costs of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.
>
> 4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.
>
> 5. All costs taxed against the insured in the "suit."
>
> 6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
>
> 7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of insurance.
>
> These payments will not reduce the limits of insurance.

(Def.'s 56.1(a)(3) Statement ¶ 18). "SECTION III - LIMITS OF INSURANCE" of the Reliance policy provides:

> Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:
>
> a. Damages under Coverage A; and
> b. Medical Expenses under Coverage C.

(Id., ¶ 19).

American Home Assurance Company issued a Commercial Umbrella Liability insurance policy covering Premcor. (Def.'s 56.1(a)(3) Statement ¶ 21). The American Home policy was effective from October 1, 1994 to October 1, 1995. (Id., ¶ 22). Endorsement #1 of the American Home policy provides that Premcor is a named insured. (Id., ¶ 23). The Limit of Liability set forth in the Declarations of the American Home policy states:

> (A) $10,000,000.00 US Single Limit any one occurrence Personal Injury or Property Damage or Advertising Liability or any combination thereof.
>
> In excess of
>
> (1) the amount recoverable under the underlying insurance as set out in the attached Schedule A.
>
> or
>
> (2) $25,000.00 US ultimate net loss in respect of each occurrence not covered by said underlying insurance.
>
> (B) $10,000,000.00 US in the aggregate for the policy period or each annual period in accordance with the "Limit of Liability – Retained Limit" Section of the policy.

(Def.'s 56.1(a)(3) Statement ¶ 24).

The American Home policy contains the following Insuring Agreements:

> I. Coverage - To pay on behalf of the Insured that portion of the ultimate net loss in excess of the retained limit as hereinafter defined, which the Insured shall become legally obligated to pay as damages for the liability imposed upon the Insured by law, or liability assumed by the Insured under contract because of (A) personal injury, (B) property damage, or (C) advertising liability, as defined herein caused by an occurrence.
>
> II. Defense, Settlement, Supplementary Payments. (The provisions of this Insuring Agreement apply solely to occurrences covered under this policy but not covered by any underlying policies listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured, **whether collectible or not**. This Insuring Agreement shall also apply to occurrences not covered by any underlying insurance due to exhaustion of any aggregate limits by reason of any losses paid thereunder.) The Company shall: (Emphasis added).
>
> > A. defend any suit against the Insured alleging liability insured under the provisions of this policy and seeking recovery for damages on account thereof even if such suit is groundless, false or fraudulent, but the Company shall have the right to make such investigation and negotiation and settlement of any claim or suit as may be deemed expedient by the Company;
> >
> > B. pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, but without any obligation to apply for or furnish such bonds, all costs taxed against the Insured in any such suit, all expenses incurred by the company and all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court that part of the judgment as does not exceed the limit of the Company's liability thereon;
> >
> > C. reimburse the Insured for all reasonable expenses incurred at the Company's request, (including actual loss of wages or salary, but not loss of other income, not to exceed $75 per day) because of his attendance at hearings or trials at such request.

> The Company agrees to pay the amounts incurred under this Insuring Agreement II, except in settlement of claims and suits, in addition to the limit of liability stated in the Declarations, and such defense and supplementary payments shall not be included as part of the ultimate net loss, as defined in the policy.
>
> The Insured shall promptly reimburse the Company (excepting Defense Costs) for any amount of ultimate net loss paid on behalf of the Insured within the retained limit specified in Item 3 (A-2) of the Declarations.
>
> Insuring Agreements I and II shall cease to apply after the applicable limits of the Company's liability has been exhausted by payment of judgment or settlements.

(Def.'s 56.1(a)(3) Statement ¶ 26).

The "Limit of Liability - Retained Limit" provision of the American Home policy states:

> A. The Company shall be liable only for that portion of the ultimate net loss excess of the Insured's retained limit defined as either:
>
> 1. the total of the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance hereof, and the applicable limits of any other underlying insurance providing coverage to the insured; or
>
> 2. the amount stated in Item 3 (A-2) of the Declarations as the result of any one occurrence not covered by such underlying policies or insurance;
>
> and then up to an amount not exceeding the amount as stated in Item 3 (A) of the Declarations as the result of any one occurrence.
>
> B. In the event of reduction or exhaustion of the aggregate limits of liability under said underlying insurance by reason of losses paid thereunder during this policy period, this policy shall, subject to its terms and conditions and the limit of liability stated in Items 3(A) and 3(B) of the Declarations:
>
> 1. in the event of reductions, pay excess of the reduced underlying insurance, or

7

> 2. in the event of exhaustion of the limits of liability, continue in force as underlying insurance.

(Def.'s 56.1(a)(3) Statement ¶ 27). The American Home policy defines "Ultimate Net Loss" as:

> the total sum which the Insured, or any company as its insurer, or both become obligated to pay by reason of personal injury, property damage, or advertising liability claims, either through adjudication or compromise, and shall also include hospital, medical, and funeral charges and all sums paid or payable as salaries, wages, compensation, fees, charges, interest, expenses for doctors, nurses, and investigators and other persons, and for settlement adjustment, investigation and defense of claims and excluding only the salaries of the Insured or any of the underlying insurer's permanent employees.
>
> The Company shall not be liable for expenses as aforesaid when such are covered by underlying policies of insurance **whether collectible or not**. (Emphasis added).

(Id., ¶ 28).

Endorsement #10 of the American Home policy provides that:

> The liability of the Company shall not be increased by the refusal or inability of the Insured to pay its Self-Insured Retention (or retained limit) or by the refusal or inability of any underlying insurer to pay, whether by Reasons of Insolvency, Bankruptcy or otherwise.

(Def.'s 56.1(a)(3) Statement ¶ 29).

The Schedule of Underlying Insurance in the American Home policy sets forth the retained limit as a primary insurance policy issued by The Planet Insurance Company (actually, Reliance National Indemnity Company) with limits of $1,750,000 over $250,000 self-insured retention. (Plaint,'s 56.1(b)(3) Statement ¶ 2).

Endorsement #11 of the American Home policy states that defense costs apply to the self-insured retention ("SIR") for pollution claims: "It is understood and agreed that coverage provided

8

by this endorsement shall be excess of a $2,000,000 per occurrence SIR, defense costs included." (Plaint.'s 56.1(b)(3) Statement ¶ 3).

The American Home policy was originally endorsed so that defense costs did not apply toward meeting the SIR for any claim. The original Endorsement #17 stated: "The Self-Insured Retention shall ... (c) be comprised of payments for actual damages only. All legal costs and expenses incurred until such time as the Self-Insured Retention is exhausted shall be paid to the Insured in addition to, and not included within the Self-Insured Retention." (Plaint.'s 56.1(b)(3) Statement ¶ 4). Endorsement #17 was amended, effective as of the starting day of the applicable policy, so that it only applied to products and completed operation claims. The following additional language was the only change made to Endorsement #17:

SELF-INSURED RETENTION (Per Occurrence)

(APPLICABLE IN THE EVENT OF THE EROSION OF
UNDERLYING POLICY PRODUCTS AND COMPLETED
OPERATIONS ANNUAL AGGREGATE)

1. It is agreed that the Limits of Insurance for each of the coverages provided by this policy will apply excess of any insurance policies listed on the Schedule of Underlying or in the event of the erosion of the underlying policy Products and Completed Operations Annual Aggregate, a US $250,000.00 Self-Insured Retention.

Endorsement #17 specifically excludes defense costs from applying to the SIR for claims involving products and completed operations: "The Self-Insured Retention shall be comprised of payments for actual damages only. All legal costs and expenses incurred until such time as the Self-Insured Retention is exhausted shall be paid by the Insured in addition to, and not included within the Self-Insured Retention." (Id., ¶ 5).

9

The Circuit Court granted summary judgment in favor of Premcor and JBF Associates as to the tort claims in Cook County. The plaintiffs of the underlying actions have appealed the ruling as to Premcor. (Plaint.'s 56.1(b)(3) Statement ¶ 1).

Premcor filed a proof of claim with the Reliance liquidator for the underlying actions in December 2003. (Plaint.'s 56.1(b)(3) Statement 10). To date, Premcor has not recovered any defense costs or expenses relating to the underlying actions from Reliance. (Id., ¶ 11). Reliance has not paid any amounts for which Premcor is legally obligated to pay as damages in the underlying complaints. (Def.'s 56.1(a)(3) Statement ¶ 30). Reliance's "each occurrence" limit of insurance has not been exhausted by payments of judgments or settlements with respect to the underlying complaints. (Id., ¶ 31). Reliance has not paid any amounts for which Premcor is legally obligated to pay as damages in the underlying complaints. (Def.'s 56.1(a)(3) Statement ¶ 30). Reliance's "each occurrence" limit of insurance has not been exhausted by payments of judgments or settlements with respect to the underlying complaints. (Id., ¶ 31)

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (*Celotex*). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on

unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

The parties agree that Illinois law applies to the issue of insurance contract interpretation. *See Hudson Ins. Co. v. Gelman Sciences, Inc.*, 921 F.2d 92, 94 n. 3 (7th Cir. 1990) (*Hudson*). Pursuant to Illinois law, the interpretation of an insurance contract is a question of law for the court and subject to resolution by a motion for summary judgment. *See Schwinn Cycling & Fitness, Inc. v. Hartford Accident & Indemnity Co.*, 863 F. Supp. 784, 786 (N.D. Ill. 1994) (*Schwinn*). When resolving such a question, it is the court's duty to effectuate the parties' intent as expressed by the terms of the insurance policy. *See Schwinn*, 863 F. Supp. at 787.

To ascertain the intent of the parties, the court must consider the insurance policy as a whole. *See Schwinn*, 863 F. Supp. at 787. Words in the insurance policy are to be given their plain and ordinary meaning, and the court does not search for an ambiguity where none exists. *See Hudson*, 921 F.2d at 94. Terms of the policy that are susceptible to more than one reasonable construction are deemed ambiguous and are interpreted in favor of the insured and against the insurer. *See Schwinn*, 863 F. Supp. at 787. However, an endorsement to a policy supersedes conflicting policy provisions. *See Tribune Co. v. Allstate Ins. Co.*, 306 Ill. App. 3d 779, 784 (1999) (*Tribune*).

Premcor argues that the American Home policy is ambiguous and "drops down" to cover losses and costs above the $250,000 SIR because Reliance is insolvent. American Home argues that the policy is not ambiguous; and the express language of the policy does not obligate American Home to "drop down" to cover losses and costs because Reliance is insolvent.

Whether an excess insurer assumes the risk of a primary insurer's insolvency and "drops down" to provide the underlying coverage is determined on a case-by-case approach by analyzing

11

each policy's terms to determine the excess insurer's liability under that policy. *See Zurich Ins. Co. v. Heil Co.*, 815 F.2d 1122, 1125 (7th Cir. 1987) (*Zurich*). Generally, an excess insurer's liability arises if the policy provides that the excess insurer assumed liability for any excess over the "amount recoverable" under the underlying policy. *See Donald B. MacNeal, Inc. v. Interstate Fire & Cas. Co.*, 132 Ill. App. 3d 564, 568 (1985)(*MacNeal*); *Reserve Ins. Co. v. Pisciotta*, 30 Cal.3d 800 (1982). The term "amount recoverable" has been found ambiguous because it could be interpreted either to expose the excess insurer only for amounts over the dollar limits of the underlying insurance or to expose the excess insurer for amounts which the insured is not able to actually recover because of the underlying insurer's insolvency. *See MacNeal*, 132 Ill. App. 3d at 567. However, in the absence of language promising to pay above the "amount recoverable," excess insurance contracts do not obligate the excess insurer to provide primary coverage if the underlying insurer has become insolvent. *See New Process Baking Co. v. Federal Ins. Co.*, 923 F.2d 62, 63 (7th Cir. 1991) (*New Process*); *Hudson*, 921 F.2d at 94-95; *Zurich*, 815 F.2d at 1125-26.

In the instant case, American Home's Limit of Liability provides $10,000,000 single limit of any one occurrence "in excess of (1) the **amount recoverable** under the underlying insurance as set out in the attached Schedule A or (2) $25,000 ultimate net loss in respect to each occurrence not covered by said underlying insurance." (Emphasis added). As such, the American Home policy contains the "amount recoverable" term that has been construed as ambiguous and required the excess insurer to drop down to cover the amount uncollectible because of primary insurer's insolvency. *See MacNeal*, 132 Ill. App. 3d at 568. However, the American Home policy also states, as set out above, that coverage includes "that portion of the ultimate net loss in excess of the retained limit" and defines "ultimate net loss" as not including expenses "when such are covered by

12

underlying policies of insurance **whether collectible or not**." (Emphasis added). This language provides that American Home is obligated to pay the "ultimate net loss," which, by definition, excludes amounts covered by underlying policies regardless if such amounts are uncollectible, such as here by reason of insolvency. These conflicting provisions are construed against the insurer. *See Jones v. Universal Cas. Co.*, 257 Ill. App. d 842, 847 (1994).

However, the American Home policy also includes Endorsement #10, which provides:

> The liability of the Company shall not be increased by the refusal or inability of the Insured to pay its Self-Insured Retention (or retained limit) or by the refusal or inability of any underlying insurer to pay, whether by Reasons of Insolvency, Bankruptcy or otherwise.

This endorsement, which supersedes any conflicting policy provisions, *Tribune*, 306 Ill. App. 3d at 784, specifically limits American Home's liability in case of the underlying insurer's refusal or inability to pay because of insolvency. Premcor contends that Endorsement #10 is ambiguous. However, the plain language of Endorsement #10 clearly prohibits any increase in American Home's liability. Accordingly, Endorsement #10 specifically prevents drop-down coverage because of the insolvency of the underlying insurer, here Reliance.

Premcor also argues that even if the American Home policy does not drop down, the policy provides coverage for the defense costs and expenses Premcor has incurred in the underlying litigation, over $2,000,000 ($1,750,000 + $250,000 SIR). American Home contends that the "retained limit" does not include defense costs; therefore, coverage by American Home is not triggered.

The American Home policy provides coverage on "that portion of the ultimate net loss in excess of the retained limit." The "Limit of Liability - Retained Limit" provision, set out above,

clearly provides American Home is liable only for that portion of the ultimate net loss excess of Premcor's retained limit defined as the total of the applicable limits of the Reliance policy. Premcor's argument that the Court need not look to the Reliance policy is contrary to the express language quoted above.

The Reliance policy is subject to a $2,000,000 "each occurrence" limit; and pursuant to the "Limits of Insurance," each occurrence limit applies only to damages and medical expenses. It is undisputed that neither Reliance nor Premcor has paid the limit in damages and/or medical expenses. Instead, Premcor has paid over $2,000,000 in defense costs. Defense costs are not included in the definition of the applicable retained limits of the Reliance policy. Accordingly, American Home's policy's condition precedent has not been met; and American Home does not have a duty to pay Premcor's defense costs.

Premcor also argues that American Home is obligated for coverage when the total amount of the "ultimate net loss" is greater than $2,000,000 whether or not Reliance actually pays its portion of Premcor's loss. However to require American Home to pay before conditions precedent to this obligation occur would render the conditions of coverage meaningless and ignore the actual terms of the contract. The bankruptcy cases cited by Premcor, *Home Ins. Co. of Illinois v. Hooper*, 294 Ill. App. 3d 626 (1998) and *In re Keck, Mahin & Cate*, 241 B.R. 583 (N.D. Ill. 1999), are inopposite, as they rely on a specific section of the Illinois Insurance Code that requires all liability policies to contain a provision which guarantees that the insolvency of the insured will not release an insurer from payment of damages.

Premcor also relies on *Zeig v. Massachusetts Bonding & Ins. Co.*, 23 F.2d 665 (2nd Cir. 1928), in support of its argument that Reliance need not actually have to pay the retained limit to

14

trigger American Home's duties under the policy. However, *Zeig's* holding that "exhaustion" of the primary policies' payments does not require collection of the primary policies as a condition precedent to the right to recover excess insurance is contrary to Seventh Circuit precedent. *See New Process*, 923 F.2d at 63; *Zurich*, 815 F.2d at 1126) ("exhaustion" does not occur until the primary insurance limits have been met through payment); *see also, Stargatt v. Fidelity & Cas. Co. of New York*, 67 F.R.D. 689, 691 (D. Del 1975) (adopting *Zeig* but also noting that a party could impose a condition precedent that party actually collect the full amount in order to "exhaust" primary insurance). Based on the plain and unambiguous terms of the policy, American Home's duties under the policy have not occurred; and American Home has no duty to reimburse Premcor for its expended defense costs.

In light of the above finding, the Court need not address whether American Home has a duty to pay defense costs associated with JBF Industries.

For the foregoing reasons, American Home's Motion for Summary Judgment is granted. Premcor's Motion for Summary Judgment is denied. Judgment is entered in favor of American Home Assurance Company.

Dated: May 20, 2005

JOHN W. DARRAH
United States District Judge

15